LEE, J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. This is a workers’ compensation case. The claimant/appellant, Margie Twine, worked for the City of Gulfport. Twine claims that in August 1994, lightning struck her building and sent electricity through her phone line allegedly causing her injury. Twine was treated thereafter by a host of doctors, some finding Twine had been shocked by the lightning and others claiming only a loud noise occurred which caused Twine’s injury. On May 2, 1995, Twine was advised that no further treatment would be allowed, and she filed a petition to controvert on May 15, 1995. Twine filed a motion for a Rule 9 hearing to force the City to provide further treatment and to pay temporary benefits. The City responded by admitting injury but denying that Twine’s current complaints were related to the injury.
*598 ¶ 2. At a March 1996 hearing, the employer admitted Twine had suffered from a surge of electricity and agreed that surgery was necessary to correct neck problems related to Twine’s injuries. After the surgery, Twine was paid full salary while recovering, and she reached maximum medical improvement in April 1996 for the neck injury. Also at this time, her treating physician, Dr. Harry Danielson, recorded Twine’s medical problems including carpal tunnel syndrome, pain in her knees, hips and legs, headaches, progressive tinnitus, trouble sleeping resulting in exhaustion, severe hearing loss, and situation depression. Dr. Danielson advised that disability retirement was needed, giving a nine percent anatomical impairment of the person as a whole as a result of the trauma and surgery.
¶ 3. In June 1996, Twine and the City entered into an agreement before the administrative law judge stating that if Twine was unable to work due to ongoing problems related to the injury, she was entitled to receive additional temporary total disability as she recovered. After Twine left work in November 1996, she never worked full time again, retiring in December 1996 when she turned 60. In March 1997, the City refused to pay benefits and Twine again filed a motion for a Rule 9 hearing. Dr. Jackson noted that Twine had a forty-four percent disability to her body as a whole and that she had been disabled since November 1996 when she first took a leave of absence from work; he further noted that he did not expect her situation to improve.
¶ 4. The administrative law judge found Twine voluntarily quit work and, except for her hearing loss and cervical spine problems, Twine failed to prove any other work-related injuries. Twine was awarded permanent partial disability for forty weeks. The Full Commission reviewed the findings of the administrative law judge and affirmed, as did the Harrison County Circuit Court. Twine now appeals to this Court raising the following issues: (1) did the trial court err in excluding testimony from the claimant’s selected doctors; (2) did the trial court err in ignoring stipulations between the employer and the claimant concerning the claimant’s injuries and causation; and (3) did the trial court err in holding a full hearing when the claimant was proceeding on a Rule 9 expedited hearing on refused medical treatment and temporary benefits; and (4) did the court err in denying the appellant’s motion for additional evidence? We review these issues and find no merit; thus, we affirm.
DISCUSSION OF THE ISSUES
¶ 5. At the outset, we first address the appellee’s contention that this appeal should be dismissed for want of jurisdiction. In December 1998, Twine filed her notice that she was appealing the decision of the Commission to the Harrison County Circuit Court. All briefing was completed by April 1999, and from that point until Twine finally received notice of Circuit Judge Whitfield’s order in January 2001, Twine’s attorney claims he continuously was in contact with the circuit clerk’s office checking to see if the order had been entered, including in November 1999 and April 2000 when he wrote the judge to ask if the judge could expedite his judgment in Twine’s case. Twine’s attorney also claimed that each time he was at the courthouse, he would personally check with the clerk to see if an order had been entered in Twine’s case. Twine’s attorney also stated that around the end of November 2000, while he was at the courthouse concerning another case, one of Judge Whitfield’s law clerks told him, “I think we got one coming out,” in response to the attorney’s questioning concerning a judgment *599 on the Twine matter. The attorney for the employer testified that both he and Twine’s attorney were told by the law clerk that Judge Whitfield would be retiring December 1, 2000, and that the order would be issued prior to that time.
¶ 6. On November 21, 2000, Judge Whitfield signed his order affirming the Full Commission, and the order was filed with the clerk the next day. After November 2000, Twine’s attorney stated he did not contact the clerk to see if the order had indeed been filed, but rather waited until January 9, 2001, for the order to arrive by fax from the clerk’s office. On January 10, 2001, Twine filed a motion to allow out of time appeal, since the time had expired in which she could file her notice of appeal with the supreme court. A hearing on this motion was held in August 2001, and the judge granted the motion, finding that a representation from the law clerk as to the timing the order would be issued did not place any duty on Twine to contact the court clerk’s office to see if the order had been issued.
¶ 7. The applicable rule in this situation is Rule 4(h) of the Mississippi Rules of Appellate Procedure which states:
The trial court, if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.
Here, Twine was notified of the November entry of judgment seven weeks after such entry, which exceeds the twenty-one days as stated in the rule. Also, Twine filed her motion the day after receiving the order, which falls under the seven-day window to do so, as prescribed in the rule. Additionally, neither party can show prejudice as a result of the out of time appeal. Accordingly, we find that the trial court properly granted Twine’s out of time appeal in allowing her fourteen days to file her notice of appeal, which she timely did.
I. DID THE TRIAL COURT ERR IN EXCLUDING TESTIMONY FROM THE CLAIMANT’S SELECTED DOCTORS?
¶ 8. Looking to the merits of the issues set forth in Twine’s brief, we note our standard of review in workers’ compensation cases:
[T]he Commission’s findings are subject to “normal, deferential standards upon review” and we will not reverse unless we find the Commission’s decision to be clearly erroneous in light of a mistake in finding of fact. “As the trier of fact, it is presumed that the Commission made proper determinations as to which evidence was credible and which was not. Unless the Commission’s decision was arbitrary and capricious, we will not tamper with the Commission findings.” “The Court of Appeals will not overturn a decision of the Workers’ Compensation Commission unless it is based on a misapplication of law or it is unsupported by the clear facts presented in the case.”
J.R. Logging v. Halford, 765 So.2d 580 (¶ 15) (Miss.Ct.App.2000) (citations omitted).
¶ 9. The administrative law judge denied payment for Twine’s medical services rendered by Dr. Joe Jackson and by Dr. Donald Weaver, finding that Twine had already selected Dr. Eugene McNally as her family physician, and noting that the employer had not authorized payment *600 to Dr. Jackson or to Dr. Weaver pursuant to Miss.Code. Ann. § 71-3-15 (Rev.2000).[1]
¶ 10. In September and in October of 1996, Dr. Weaver saw Twine for complaints relating to anemia and bronchitis, and Twine requested that Dr. Weaver refer her to neurologist Dr. Joe Jackson. Twine complained to Dr. Jackson of pain in her neck, shoulder, elbow, wrists, knees, and back. After prescribing a myriad of treatments, Dr. Jackson finally noted that based on what Twine had told him, he could not understand why Twine was medically unable to tolerate work-related activities.
¶ 11. In the administrative law judge’s thorough opinion, which the Full Commission affirmed in total, Judge Thompson stated:
The evaluations and treatment recommended by Dr. Joe Jackson were not required by the work injury and the process of Ms. Twine’s recovery therefrom. By the time she consulted Dr. Jackson, a neurologist, in December 1996, more than two years after the work accident, Ms. Twine had been tested, treated, and released by numerous physicians, including various specialists, at lease one a neurologist, and her visit to Dr. Jackson was nothing but blatant doctor shopping to find a doctor who would support her allegations of disability. Dr. Jackson believed Ms. Twine’s subjective complaints and in a good effort tried conservative treatment but did nothing for Ms. Twine that had not already been tried and failed. In the end, even he admitted he was baffled and could not offer her anything. Ms. Twine’s visits to Dr. Weaver, beginning on September 23, 1996, also more than two years after the work accident, were primarily for problems not related to the work accident, such as anemia and bronchitis. She had already made her selection of family physician when she saw Dr. McNally. The employer is not responsible for payment for any medical services or supplies rendered to Ms. Twine by or at the order of Dr. Jackson or Dr. Weaver unless authorized by the employer at the time pursuant to the Commission’s Medical Fee Schedule.
Twine saw Dr. McNally shortly after her accident. Thereafter, Dr. McNally was the one who referred her to various other doctors. We have reviewed the entire findings of the administrative law judge, which findings were affirmed by the Full Commission, and we find the Commission was not arbitrary or capricious in its findings, as the facts presented support the ruling. There is no merit to this issue.
II. DID THE TRIAL COURT ERR IN IGNORING STIPULATIONS BETWEEN THE EMPLOYER AND THE CLAIMANT CONCERNING THE CLAIMANT’S INJURIES AND CAUSATION?
¶ 12. Twine claims that the employer did not abide by certain stipulations made at the initial hearing in this case. Specifically, Twine argues that at this hearing, the employer stipulated that Twine suffered certain work-related injuries, including herniated disk, permanent hearing loss, right carpal tunnel syndrome, entrapment of the left ulnar nerve, acute vocal cord injury, and headaches. Twine, however, states that the administrative judge and the circuit judge both ignored *601 the stipulations concerning the carpal tunnel syndrome, ulnar nerve entrapment, vocal cord injury and headaches. In our examination of both the opinion from the administrative law judge and the ruling from the circuit court, we find that the judges were fully aware of the stipulations that the employer and Twine recognized. These tribunals also recognized that, in spite of Twine’s condition, she had failed to show her wage earning capacity was affected by her stipulated-to, work-related injuries. In affirming the Full Commission, the circuit court stated:
Claimant/Appellant has the burden to demonstrate that she sustained a loss of wage earning capacity after she attained MMI. Since she returned to work after attaining this condition with the employer, there was a rebuttable presumption that she presented no proof of attempts on her part to secure any other employment after she resigned with employer in December 1996. Claimant’s claim for permanent disability benefits beyond those for bilateral hearing loss was properly denied by the Commission since there is substantial evidence to show that she had no such claim.
¶ 13. Twine argues that reports from several doctors supported her claim that stipulations were made in this case. We concede that the employer admitted that Twine suffered the afore stated work-related injuries. We find, however, that these stipulations are extraneous to the fact that even in light of the admissions of work-related injury, Twine failed to show any decline in wage earning capacity as would entitle her to disability benefits. See International Paper Co. v. Kelley, 562 So.2d 1298, 1303 (Miss.1990). Thus, we find no merit to this issue.
III. DID THE TRIAL COURT ERR IN HOLDING A FULL HEARING WHEN THE CLAIMANT WAS PROCEEDING ON A RULE 9 EXPEDITED HEARING ON REFUSED MEDICAL TREATMENT AND TEMPORARY BENEFITS?
¶ 14. With her third issue, Twine claims she thought the July 28, 1997 hearing would be on the issues raised in her motion, not on her case as a whole, and the trial court erred in failing to inform her that the hearing was a “full” hearing rather than a Rule 9 hearing. She claims, since she had not yet reached maximum medical improvement, she was unprepared at that time to present her case for final hearing. Twine further argues that the administrative law judge decided the whole case without- benefit of the full hearing at which time she would have presented corroborating testimony from her doctors and would have been able to defend against the employer’s allegation of “doctor shopping.”
¶ 15. The employer rebuts that Twine was well-aware that the hearing would be on the merits of her claim, and that Twine had ample opportunity to object or request additional time, neither of which she did. The Commission granted Twine’s motion to expedite, which concerned her amended petition to controvert, and the April 1997 order stated that the cause would be placed on the active docket for sixty days to allow discovery, after which time a hearing on the merits as to the issue of permanent disability ' would be conducted. Thereafter, Twine did not file any objection to the order. Additionally, Twine received an “official notice of hearing” in July 1997 which stated the hearing was “on the merits.” At no place in the record do we find that Twine objected to the hearing being “on the merits” of her case, nor do we find evidence that she requested a rescheduling of such hearing since she claims she was not prepared at that time.
¶ 16. In support of her contention that the judge exceeded her authority in con *602 ducting a hearing on the full merits, Twine cites to Monroe v. Broadwater Beach Hotel, 593 So.2d 26 (Miss.1992). In Monroe, the decision of the administrative law judge was affirmed by both the Full Commission and the circuit court. However, the Mississippi Supreme Court found that the administrative law judge erred as a matter of law when he specifically stated that the hearing was limited to whether the claimant was suffering from improper medical treatment or lack of medical treatment, and then proceeded to make findings on maximum medical recovery and apportionment. Monroe, 593 So.2d at 30. The court found that the administrative law judge abused his discretion in misleading Monroe into thinking further hearings would follow when, in fact, that hearing was the final one. Id.
¶ 17. The case sub judice is distinguishable from Monroe. Here, contrary to what Twine asserts, there is no evidence that the judge gave Twine any indication that the hearing would be anything other than on the merits. This issue has no merit.
IV. DID THE COURT ERR IN DENYING THE APPELLANT’S MOTION FOR ADDITIONAL EVIDENCE?
¶ 18. With her final issue, Twine argues the Commission erroneously denied her December 1998 motion for additional evidence. Specifically, Twine asked the court to admit Twine’s own affidavit plus certain reports from Dr. Weaver, Dr. Jackson, and Dr. Dix which concerned her pain, treatment, and prospects for continued employment in the future.
¶ 19. Twine cites to Walker Mfg. Co., v. Cantrell, 577 So.2d 1243 (Miss.1991), in reminding us of the distinction of the roles of the administrative law judge and of the Commission. See Walker, 577 So.2d at 1246. She also cites to Wells-Lamont Corp. v. Watkins, 247 Miss. 379, 151 So.2d 600 (1963), in reminding us that the Commission has the discretion to allow additional evidence if such evidence was inadvertently omitted or if the case has yet to be fully developed. See Wells-Lamont, 247 Miss. at 388, 151 So.2d at 604. Twine deducts that, in her case, it is clear that “essential testimony and evidence inadvertently left out should be allowed.”
¶ 20. We find in the present case that two and a half years had passed from the date of injury to the date Twine filed her amended petition to controvert, and Twine had ample opportunity prior to the July 1997 hearing to gather and then to present doctors’ reports and other evidence relevant to her case. We also note that her motion, as written, did not meet the requirements of the applicable rules of the Workers’ Compensation Commission. Procedural Rule 9 states in part:
A motion for the introduction of additional evidence must be made in writing at least five (5) days prior to the date of the hearing of the review by the Full Commission. Such shall state with particularity the nature of such evidence, the necessity therefor, and the reason it was not introduced at the evidentiary hearing.
Rules of Miss. Workers’ Comp. Comm’n, Procedural Rule 9. Twine’s motion, filed a year and a half after the hearing, was not timely and merely listed the documents without going into detail the need for the documents and reason why they were not introduced previously. We find the judge did not abuse his discretion in denying this motion.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT *603 COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.

. "The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician to administer medical treatment. Referrals by the chosen physician shall be limited to one (1) physician within a specialty or subspecialty area.” Miss.Code Ann. § 71-3-15 (Rev.2000).